HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BARJINDER SINGH, et al., | |
| Plaintiffs, | CASE NO. C13-1125RAJ |
| v. | ORDER |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, et al., | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the court on Defendants' motion to dismiss. No party requested oral argument, and the court finds oral argument unnecessary. For the reasons stated herein, the court GRANTS the motion. Dkt. # 5. Plaintiffs may file an amended complaint in compliance with this order no later than February 27, 2014, or the court will dismiss this case with prejudice.

## II. BACKGROUND

The court describes the facts underlying this case as Plaintiffs Barjinder Singh and Ramandeep Kaur allege them in their complaint and as they appear in documents subject to judicial notice. The court cites the complaint with bare "¶" symbols, and uses "Ex." to cite documents subject to judicial notice attached to the declaration of Defendants' counsel. Dkt. # 6.

ORDER – 1

Plaintiffs borrowed a total of just under $380,000 in two loans from Bank of America, N.A. ("BofA") in March 2007, securing each loan with a deed of trust to their condominium in Kent, Washington. Both deed of trusts named Prlap, Inc. as the trustee and BofA as the lender (and thus the beneficiary). Exs. A-B. The notes whose obligations the deeds of trust secure are not part of the record, but Plaintiffs do not deny their existence. Like Plaintiffs, the court will refer to their two notes as a single note and their two deeds of trust as a single deed of trust.

In a document dated October 12, 2010, but notarized on November 3, 2010, BofA appointed ReconTrust Company, N.A. ("ReconTrust") as the successor trustee. Ex. C.

Plaintiffs fell behind in their loan payments, leading them to communicate with BofA about obtaining a loan modification via the Home Affordable Mortgage Program ("HAMP"). ¶ 2.4. BofA concluded that Plaintiffs did not qualify for HAMP because Mr. Singh's income was too low. Plaintiffs protested the decision, knowing that they faced a May 6, 2011 trustee's sale of their home. ¶ 2.5. Representatives from BAC Home Loan Servicing, LP ("BAC"), a wholly-owned BofA subsidiary, communicated with Plaintiffs in April 2011, telling them to be patient and that their request for modification was still under consideration. ¶ 2.5. Just two days before the foreclosure sale, a third party whom Plaintiffs had hired attempted to negotiate with BAC. ¶ 2.5. Plaintiffs were directed to contact ReconTrust. They attempted to do so, but were unable to reach anyone. ¶ 2.5. Plaintiffs (or the third party) were told by one or more of the Defendants that the foreclosure sale would be postponed. ¶¶ 2.5, 2.6. The foreclosure sale occurred as scheduled in May 2011. Plaintiffs did not sue to enjoin the sale, nor do they allege that they could have satisfied the requirement that they make monthly loan payments to the court as a condition of an injunction against the sale. RCW 61.24.130(1). Plaintiffs attempted to negotiate a rescission of the sale, but had no luck. ¶ 2.7. A trustee's sale occurred in May 2011.

ORDER – 2

Two years after the trustee's sale, Plaintiffs sued BofA, BAC, and ReconTrust. They also sued the Federal National Mortgage Association, better known as "Fannie Mae." They contend that every Defendant violated the Washington Consumer Protection Act (RCW Ch. 19.86, "CPA"), that ReconTrust breached the duty of good faith that the Washington Deed of Trust Act (RCW Ch. 61.24) imposes on trustees, and that all Defendants are liable for negligent or intentional misrepresentations to Plaintiffs.

The court now considers Defendants' motion to dismiss Plaintiffs' complaint in its entirety.

## III.  ANALYSIS

Defendants invoke Fed. R. Civ. P. 12(b)(6), which permits a court to dismiss a complaint for failure to state a claim. The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). The court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

ORDER – 3

**A.     Most of Plaintiffs' Allegations of Wrongdoing Are Implausible.**

Plaintiffs describe a host of wrongdoing to support each of their claims. Most of their allegations are implausible, as the court discusses in this section. In the next section, the court will consider whether there are plausible allegations that Defendants' wrongdoing (even assuming that Plaintiffs adequately pleaded it) caused damage to Plaintiffs.

> **1.     There Are No Plausible Allegations that Fannie Mae Held an Interest in Plaintiffs' Property Before the Trustee's Sale.**

Plaintiffs allege that Defendants falsely represented that BofA held the note evidencing Plaintiffs' loan. They assert that it was Fannie Mae who held the note. The assertion is not plausible. Plaintiffs allege that the "other documentation in this case makes clear that Defendant Fannie Mae was the supposed note holder and owner of the mortgage loan since shortly after the loan was made." ¶ 2.9. But Plaintiffs neither attach this "other documentation" to their complaint nor offer any allegations describing it. At best, they allege that BofA and BAC referred in correspondence with Plaintiffs to an "'investor' who supposedly owned the loan." *Id.* "Presumably," Plaintiffs declare, "that was Defendant Fannie Mae." *Id.* Nowhere do Plaintiffs explain why they presume that Fannie Mae was the unnamed investor. The only documents Plaintiffs identify with specificity that also mention Fannie Mae are a May 10, 2011 trustee's deed[1] in which ReconTrust conveys Plaintiffs' property to Fannie Mae and a document with the same date assigning BofA's interest in Plaintiffs' deed of trust to Fannie Mae. ¶¶ 2.2, 2.12; Exs. D & F. The court takes judicial notice of both documents, which are consistent with Fannie Mae acquiring an interest in Plaintiffs' property from BofA *after* the trustee's

---

[1] The trustee's deed bears a printed date of May 10, 2011, has a signature with a handwritten "5/11/11" notation, and was notarized on May 12, 2011. At least one other document before the court has a similar hodgepodge of dates. Plaintiffs insist that this is evidence that the documents are invalid or otherwise problematic. ¶ 2.12. They offer no authority for the notion that, for example, a notary's acknowledgement of a signature from a previous day is invalid. The court will not further consider Plaintiffs' allegations as to the notarization of documents, because Plaintiffs do not plausibly tie them to any wrongdoing.

ORDER – 4

sale.  Neither of them is consistent with Plaintiffs' unexplained "presumption" that Fannie Mae had a legal interest in their property or their loan before the trustee's sale.  There is, in short, no plausible allegation that Fannie Mae, not BofA, was the beneficiary of Plaintiffs' deed of trust or the holder of their note prior to the trustee's sale.  Plaintiffs' allegations that BofA misrepresented its role prior to the trustee's sale are implausible for the same reason.

The court observes that Defendants are apparently of two minds as to who held the note prior to the trustee's sale.  They both concede that Fannie Mae was the beneficiary of the deed of trust and assert repeatedly that BofA was the beneficiary.  *Compare* Defs.' Mot. (Dkt. 5) at 9 ("Fannie Mae, as the beneficiary under Plaintiffs' [deed of trust], was bestowed with the authority to appoint any entity to service the loan . . .") *with* Defs.' Mot. at 18 (arguing that the foreclosure documents "properly identify [BofA] or BAC . . . as the owner of the note and the creditor to whom the debt is owed").  The court has no idea who was the beneficiary or note holder at the time of the foreclosure.  It merely holds today that it is implausible, based on the allegations in the complaint, to conclude that BofA was not the beneficiary or noteholder.

### 2. There Are No Plausible Allegations that ReconTrust Falsely Represented That It Was the Trustee on Plaintiffs' Deed of Trust.

In an October 12, 2010 document, BofA appointed ReconTrust as the successor trustee on the deed of trust.  Ex. C.  Plaintiffs insist that the assignment was invalid, and that ReconTrust thus acted deceptively when it later claimed to be the trustee authorized to conduct the sale of their property.  As was the case with their allegations about BofA's false representations about its role as lender and beneficiary, Plaintiffs offer no plausible allegations that ReconTrust was not properly appointed as a trustee.

Plaintiffs allege that Leticia Quintana, the "Assistant Secretary" who signed the assignment on behalf of BofA, was not "an actual Assistant Secretary" of BofA, but rather an employee of ReconTrust.  ¶ 2.9.  Plaintiffs offer no detail that would help make

ORDER – 5

their assertion plausible. But even if they had, their assertions are legally meaningless. The deed of trust permits the beneficiary to appoint a successor trustee, as does the Deed of Trust Act. Ex. A (¶ 24); RCW 61.24.010(2). Plaintiffs, as the borrowers, have no role in appointing trustees and no right to object to the appointment of a trustee. Whatever roles Ms. Quintana played, BofA has not objected to her acting to appoint ReconTrust as a successor trustee. Plaintiffs have no standing to raise that objection on their own behalf.[2]

### 3. There Are No Plausible Allegations that Defendants Misstated the Balance of Plaintiffs' Loan or the Fees Plaintiffs Had Incurred.

Plaintiffs offer cursory allegations that BofA misrepresented the amount they owed on their loan and how their payments had been applied, ¶ 3.4, and that ReconTrust "inflated some of the other fees associated with sending out the Notice of Default," ¶ 3.3. These allegations are conclusory. Without more details (*e.g.* allegations that identify the "inflated fees" or the specific misrepresentation about the amount Plaintiffs owed), these allegations are implausible.

### 3. There Are No Plausible Allegations That ReconTrust Lacks the In-State Physical Presence that the Deed of Trust Act Requires.

Plaintiffs allege that ReconTrust did not comply with a portion of the Deed of Trust Act that requires that a trustee maintain a physical presence in Washington throughout the foreclosure process. RCW 61.24.030(6) ("[P]rior to the date of the notice of trustee's sale and continuing thereafter through the date of the trustee's sale, the trustee must maintain a street address in this state where personal service may be made, and the trustee must maintain a physical presence and have telephone service at that address."). The notice of trustee's sale (to which Plaintiffs' complaint refers) states an Olympia address for ReconTrust's agent for service of process and provides the agent's phone

---

[2] Plaintiffs similarly assert that the person who assigned BofA's interest in their deed of trust to Fannie Mae in May 2011 was not actually a BofA employee. ¶ 2.2. Again, Plaintiffs have no standing to raise that objection.

ORDER – 6

number. Ex. E.  Against that judicially noticeable statement, Plaintiffs' conclusory assertion that "ReconTrust does not comply with the requirements of RCW 61.24.030(6) by maintaining a physical presence in the state, along with a street address and operating telephone number where personal service can be made" is implausible.  ¶ 2.9.  Plaintiffs could, if they had a factual basis to do so, allege that the phone number and street address ReconTrust provided for its Washington agent was a sham.  Plaintiffs' decision to simply ignore ReconTrust's designation of an in-state agent renders their assertions implausible.

This court has previously held that designation of a Washington agent with a physical address and phone number suffices to meet the physical presence requirement.  *See Douglas v. ReconTrust*, No. C11-1475RAJ, 2012 U.S. Dist. LEXIS 161268, at *13-16 (W.D. Wash. Nov. 9, 2012); *Ayala v. Fannie Mae*, No. C13-285RAJ, 2013 U.S. Dist. LEXIS 139877, at *6 & n.2 (W.D. Wash. Sept. 17, 2013).  Plaintiffs offer no argument addressing the reasoning in those decisions, and the court reaffirms those decisions today.

### 4. Nothing Prohibits ReconTrust From Serving as Trustee Merely Because It Is Allegedly a Wholly-Owned Subsidiary of BofA.

Plaintiffs also allege that ReconTrust may not serve as a trustee because it is a wholly-owned subsidiary of BofA, ¶ 2.9, and thus is unable to carry out the duty of good faith that the Deed of Trust Act imposes on trustees.  RCW 61.24.010(4).  The Deed of Trust Act establishes that the trustee "has a duty of good faith to the borrower, beneficiary, and grantor," RCW 61.24.010(4), but also relieves the trustee of any "fiduciary duty or fiduciary obligation to the grantor or other persons having an interest in the property subject to the deed of trust," RCW 61.24.010(3).  Plaintiffs contend that ReconTrust's status as a subsidiary of BofA created a conflict of interest.  That, by itself, falls well short of establishing a breach of a duty of good faith.  Even before the Washington Legislature amended the deed of trust act to abolish a trustee's fiduciary duty to a borrower, its courts recognized that "an employee, agent, or subsidiary of a beneficiary" could serve as a trustee.  *Cox v. Helenius*, 693 P.2d 683, 687 (Wash. 1985);

ORDER – 7

*see also Meyers Way Development LP v. University Savings Bank*, 910 P.2d 1308, 1315-16 & n.8 (Wash. Ct. App. 1996) (noting that even the "exceedingly high" fiduciary duty that a trustee owed to a borrower did not prohibit a trustee from "serving simultaneously as the creditor's attorney, agent, employee or subsidiary"). No authority Plaintiffs have cited, and no authority of which the court is aware, prohibits a subsidiary of the beneficiary from serving as a trustee.

### 5. Plaintiffs' Plausibly Allege that Some of the Defendants Acted Unlawfully While "Dual-Tracking" Plaintiffs' Foreclosure and Loan Modification Negotiations.

Plaintiffs' only plausible allegations of wrongdoing are that ReconTrust, BAC, and BofA collectively misled Plaintiffs about the status of their foreclosure while Plaintiffs attempted to negotiate a loan modification. Plaintiffs "continually received promises from the representatives at the service center that the foreclosure sale would not proceed while their loan modification was being processed . . . ." ¶ 2.5. The third party who contacted Defendants on their behalf received assurance, even on the day of the trustee's sale, that the sale would not occur. *Id.*

This practice, which Plaintiffs describe as "dual tracking," ¶ 2.7, is unlawful. To the extent that ReconTrust participated, it violated its duty of good faith. To the extent that BofA or BAC participated, they engaged in an unfair or deceptive practice within the meaning of the CPA.[3] RCW 19.86.020. Defendants had no obligation (or at least Plaintiffs do not plausibly allege an obligation) to modify Plaintiffs' loan, but they had an obligation to be honest with Plaintiffs about the foreclosure process. They similarly had an obligation not to make false promises that a trustee's sale would not occur. At substantial risk of stating the obvious, it is unlawful to simultaneously sell Plaintiffs' home and promise them not to sell their home.

---

[3] Plaintiffs' complaint does not make clear who, among BAC, BofA, and ReconTrust, is responsible for the dual-tracking process and the false representations during that process. If Plaintiffs chose to amend their complaint, they must amend their allegations to make clear who is liable.

ORDER – 8

**B.     Plaintiffs Have Not Plausibly Alleged an Injury Flowing From Defendants' Wrongdoing.**

Each of Plaintiffs' causes of action requires them not merely to allege wrongdoing, but to show that the wrongdoing caused them injury.  An unfair or deceptive act within the scope of the CPA is not a violation of the CPA unless it also causes an injury to a plaintiff in her business or property.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins.*, 719 P.2d 531, 523 (Wash. 1986).  A claim for fraud or negligent misrepresentation requires damages as a result of a plaintiff's reliance on a false statement.  *Salter v. Heiser*, 239 P.2d 327, 331 (Wash. 1951) (holding that plaintiff in a fraud action "is entitled to recover damages for losses proximately caused by the defendant's fraud"); *Ross v. Kirner*, 172 P.3d 701, 704 (Wash. 2007) (stating elements of negligent misrepresentation).  Plaintiffs do not explain what law permits them to recover damages for a trustee's breach of its duty of good faith (the Deed of Trust Act itself creates no cause of action for damages), but the court is confident that damages are necessary.

Plaintiffs claim a range of damages.  They were "deprived of the Property and their home," they were "actually evicted from the Property by Defendant Fannie Mae," they "suffered emotional distress," and they "incurred financial losses as a result of the actions of the Defendants, including the cost of defending the eviction proceeding." ¶ 2.13.  They also ask that the court use its equitable power to give them back their property.  ¶ IV(5)-(6).

Several of these allegations are easily dismissed.  The CPA does not permit recovery of emotional damages.  *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 858 P.2d 1054, 1064 (Wash. 1993).  The "eviction proceeding" that Plaintiffs mention is described nowhere in their complaint.  The court speculates that Fannie Mae, after acquiring ownership of Plaintiffs' property at the May 2011 trustee's sale, conducted eviction proceedings.  If Plaintiffs have a claim for damages arising out of the

ORDER – 9

eviction, they have not stated it in their complaint. Indeed, they have not plausibly alleged any wrongdoing by Fannie Mae.

Plaintiffs also have no allegations that would overcome the limitation of remedies that the Deed of Trust Act imposes on plaintiffs who fail to seek injunctive relief before a trustee's sale occurs. Failure to sue to enjoin a trustee's sale waives most claims. *Albice v. Premier Mortgage Servs. of Wash., Inc.*, 276 P.3d 1277, 1282 (Wash. 2012); *Frizzell v. Murray*, 313 P.3d 1171, 179 Wn.2d 301, 306-10 (Wash. 2013). Plaintiffs offer neither allegation nor argument suggesting that they can avoid the waiver that attaches to their failure to seek injunctive relief before the trustee's sale. *See Albice*, 276 P.3d at 1283 (noting circumstances in which waiver doctrine is inapplicable). The Deed of Trust Act exempts some claims from waiver, including claims for fraud or misrepresentation, claims arising under Title 19 of the Revised Code of Washington (which includes the CPA), and claims asserting a trustee's failure "to materially comply" with the Deed of Trust Act. RCW 61.24.127(1). The exemption prohibits "any remedy at law or in equity other than monetary damages," and it declares that no claim may "affect in any way the validity or finality of the foreclosure sale or a subsequent transfer of the property." RCW 61.24.127(2). Plaintiffs nonetheless ask the court to "prohibit the foreclosure of the Residence," a request that was moot two years before Plaintiffs sued, and to "[v]oid[] the foreclosure sale . . . and re-vest[] title to the Property in the name of [Ms. Kaur and Mr. Singh]."[4] ¶ IV(5)-(6). Those claims fail as a matter of law.

What remains are Plaintiffs' assertions of financial losses as a result of the foreclosure; Plaintiffs do not adequately tie these assertions to Defendants' wrongdoing. Plaintiffs admit, candidly enough, that they were twenty payments behind on their mortgage. ¶ 2.7. Their complaint thus raises the following question: if Defendants had

---

[4] Plaintiffs' complaint repeatedly misnames Ms. Kaur and Mr. Singh, and occasionally uses the name of the wrong trustee. That is presumably the error of Plaintiffs' counsel. Decrying the practices of mortgage lenders who use a cookie-cutter process to conduct foreclosures is less effective when the complaint itself bears the hallmarks of a cookie-cutter process.

ORDER – 10

not violated the law, would Plaintiffs have avoided foreclosure? Even reading their complaint charitably, the answer is no. Plaintiffs do not allege, for example, that if Defendants had been honest about their intent to proceed with the trustee's sale regardless of negotiations over a possible loan modification, they would have done anything differently. They do not allege that they would have sued to enjoin the sale. They do not allege that they could have met the financial obligations that the Deed of Trust Act imposes as a condition of enjoining a trustee's sale. RCW 61.24.130(1). For these reasons, their complaint does not plausibly allege that the financial and emotional damages flowing from foreclosure are attributable to Defendants' misconduct.

It is possible, even for a homeowner who has defaulted on a mortgage, to allege damages flowing from a wrongful foreclosure. For example, a homeowner could allege that had her lender and trustee followed the law, the foreclosure would have taken longer to complete, and that she would have been therefore been able to cure her default before foreclosure. Similarly, it is possible that false statements from a lender or trustee could induce a homeowner to forego opportunities that might either avoid a foreclosure or ameliorate its financial impact. There are no such allegations in Plaintiffs' complaint. It is implausible, based on the allegations of the complaint, to conclude that Plaintiffs would be any better off had Defendants complied with the law. The court suggests no approval of Defendants' practices. Defendants, like many banks and their affiliates in recent years, deprived Plaintiffs of their home in a process that may not have complied with the law, and almost certainly did not comply with basic human decency. The court can chide Defendants for abysmal customer service in a business tied intimately to its customers' financial and emotional well-being. The court cannot, however, change the basic truth that if a homeowner cannot pay her mortgage, she will ultimately lose her home.

ORDER – 11

**C.     Although Plaintiffs Have Not Stated a Claim, the Court Will Permit Them to Amend Their Complaint.**

To summarize, Plaintiffs fail, except as to their "dual-tracking" allegations, to allege plausibly that any Defendant violated the law.  Plaintiffs do not identify anything that Fannie Mae did wrong.  None of Plaintiffs' allegations plausibly link Defendants' wrongdoing (whether adequately alleged or not) to their damages.  Plaintiffs offer no allegations to avoid the bar on injunctive and other equitable relief contained in RCW 61.24.127.  For these reasons, Plaintiffs have failed to state a claim on which the court can grant relief.  The court need not consider Defendants' additional arguments.[5]

Although the court dismisses the complaint in its entirety, it will permit Plaintiffs to amend their complaint.  Plaintiffs did not request leave to amend their complaint.  Even absent that request, however, a court cannot dismiss a complaint with prejudice unless it concludes that no amendment could cure the complaint's deficiencies.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).  The court cannot rule out the possibility that Plaintiffs could amend their complaint to state a cognizable claim.  They could add plausible allegations of damage flowing from Defendants' dual-tracking.  They could add details to support their conclusory assertions that one or more Defendants overstated the balance owing on their loan.

The court does not suggest that Plaintiffs should amend their complaint.  If they do, they must at a minimum amend or delete the allegations that do not even describe a violation of law, much less a violation that caused them damages.  They must delete requests for relief that the court cannot grant, such as their request that the court void

---

[5] The court has no occasion to reach Defendants' argument that Plaintiffs' assertions of fraud and misrepresentation do not comply with the heightened pleading requirement of Federal Rule of Civil Procedure 9(b).  If Plaintiffs amend their complaint, however, they must either find authority for their position that federal pleading standards do not apply to state law claims in federal court, they must comply with Rule 9(b), or they must not plead claims subject to Rule 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (noting that the Federal Rules of Civil Procedure apply in federal court regardless of the source of subject matter jurisdiction); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102-03 (9th Cir. 2003) (concluding that Rule 9(b) applies to state-law causes of action in federal court).

ORDER – 12

their foreclosure sale. They must be specific about which Defendants engaged in unlawful conduct, or must explain why they are unable to be specific. If Plaintiffs do not comply with this order, and the court grants a subsequent motion to dismiss, it will consider imposing sanctions via 28 U.S.C. § 1927 for unreasonably and vexatiously multiplying proceedings in this case.

## IV. CONCLUSION

For the reasons previously stated, the court GRANTS Defendants' motion to dismiss. Dkt. # 5. Plaintiffs may file an amended complaint in compliance with this order no later than February 27, 2014. If they do not, the court will dismiss this case with prejudice.

DATED this 7th day of February, 2014.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 13