HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BARJINDER SINGH, et al.,

        Plaintiffs,

    v.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, et al.,

        Defendants.

CASE NO. C13-1125RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on Defendants' motion to dismiss.  No party requested oral argument, and the court finds oral argument unnecessary.  For the reasons stated herein, the court GRANTS the motion.  Dkt. # 22.  Plaintiffs have not requested leave to amend their complaint, and the court concludes that Plaintiffs would not state viable claims even if the court granted leave to amend.  The court accordingly DISMISSES this action with prejudice, and directs the clerk to enter judgment for Defendants.

## II.  BACKGROUND

The court last considered this dispute when it dismissed Plaintiffs' original complaint in a February 7, 2014 order.  In that order, the court explained why the original complaint stated no viable claims, but granted Plaintiffs leave to amend.  Plaintiffs responded with an amended complaint that addressed very few of the issues that led the

ORDER – 1

court to dismiss their original complaint.  Its principal changes were additional allegations regarding whether Defendant Bank of America, N.A. ("BofA") or Defendant Federal National Mortgage Association ("Fannie Mae") was the holder of the promissory note at the core of this dispute, and a few new allegations regarding the damages Plaintiffs allegedly incurred as a result of Defendants' wrongdoing.  These new allegations do not salvage Plaintiffs' suit.

The court briefly revisits the allegations of Plaintiffs Barjinder Singh and Ramandeep Kaur, a brother and sister who once lived (along with other family members) in a home in Kent.  They took out two loans (the court will refer to them as a single loan, for simplicity) from BofA in 2007.  BofA secured the note evidencing the loan with a deed of trust.  There is no dispute that by late October 2010, Plaintiffs had defaulted on the loan.  There are no allegations in the complaint that Plaintiffs could have cured that default.

Plaintiffs did, however, attempt to obtain a modified loan that they could afford. To that end they turned to either BofA or its subsidiary, BAC Home Loan Servicing, LP ("BAC") to request a modification.  Because none of Plaintiffs' claims require the court to distinguish between BofA and BAC, the court will generally not make any distinction. The amended complaint is silent as to when Plaintiffs first requested a modified loan, but it admits that in March 2011, they received notice from BofA that they lacked sufficient income to warrant a modification.

By March 2011, there is no dispute that Plaintiffs also knew they faced foreclosure.  They do not dispute that they received a notice of default in late 2010, and they do not dispute that by February 2011, they received a notice of a trustee's sale scheduled for May 6, 2011.  The trustee who issued that notice was Defendant ReconTrust, N.A.

ORDER – 2

Despite BofA's initial rejection of their request for a modified loan, Plaintiffs believed that BofA had failed to consider all of their household income, and that if it did so, it would modify the loan.  There are no plausible allegations that anyone had an obligation to modify Plaintiffs' loan, regardless of their household income.  And there are no plausible allegations that any Defendant promised them a modified loan.  Instead, BofA "dual tracked" Plaintiffs, which is to say that it purported to consider Plaintiffs' renewed request for a loan modification while assuring Plaintiffs that the May 6, 2011 trustee sale would not occur until BofA made a decision about the modification.  Those promises did not, however, result in ReconTrust taking any action to postpone the sale. With just a few days before the sale, and with no decision from BofA on their modification request, Plaintiffs brought in a third party to help them cut BofA's red tape and (around May 4) they began attempting to contact ReconTrust directly.  They had no success even reaching anyone at ReconTrust, although the notice of trustee's sale provided a toll-free contact number.

The trustee's sale occurred as scheduled on May 6, 2011.  By May 10, Plaintiffs admit that BofA finally communicated that it would not modify their loan, and it declined to rescind the trustee's sale.  It was Fannie Mae who bought Plaintiffs' property at the trustee sale.  Plaintiffs do not admit as much, but they admit that Fannie Mae later evicted them from the property.

From these allegations, Plaintiffs attempt to state three claims.  They claim that every Defendant has violated the Washington Consumer Protection Act ("CPA") and is liable for either intentional or negligent misrepresentations.  They contend that ReconTrust violated the Washington Deed of Trust Act.  These are the same claims Plaintiffs raised in their original complaint, which the February 7 order dismissed in its entirety via Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Incorporating by reference the court's discussion of the standards applicable to a Rule

ORDER – 3

12(b)(6) motion from the February 7 order, as well as the court's analysis of Plaintiffs' original complaint, the court explains why Plaintiffs' amended complaint fares no better.

### III.  ANALYSIS

**A.    Plaintiffs Do Not Succeed By Restating Rejected Claims From Their Original Complaint.**

Although the court instructed them not to, Plaintiffs used their amended complaint to restate many of the claims that the court rejected in February.  The claims fare no better this time around, particularly because Plaintiffs offered no new argument to support them.  The court briefly considers each of these rerun arguments.

Plaintiffs reassert, without citing any new authority, that ReconTrust violated a requirement of the Deed of Trust Act (RCW 61.24.030(6)) by failing to maintain a physical presence in Washington.  The court need not reiterate its disagreement with that position.  Rather than new argument, Plaintiffs used their amended complaint (and response to the motion to dismiss) to announce that they disagreed with the court.  They are free to do so, of course, but the proper way to disagree with the court is to either file a motion for reconsideration[1] or appeal.  Plaintiffs' choice to simply reassert arguments that the court rejected is not acceptable advocacy.

Plaintiffs reassert, without citing any new authority, that they have a claim based on their concerns about the notarization of the document appointing ReconTrust as a trustee and the document conveying their deed of trust to Fannie Mae.  Improprieties in notarization can give rise to a CPA claim or claim for violation of the Deed of Trust act, but only where the impropriety is used to evade the law.  For example, in *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1182 (Wash. 2013), the court considered a notice of a trustee's sale that was notarized *before* the trustee signed it.  The court held that "false

---

[1] A motion for reconsideration must come within fourteen days of the ruling it challenges, and must demonstrate either "manifest error in the prior ruling" or "new facts or legal authority [that] could not have been brought to [the court's] attention earlier with reasonable diligence."  Local Rules W.D. Wash. LCR 7(h)(1), (2).  Plaintiffs neither timely moved for reconsideration nor met the standard applicable to that motion.

ORDER – 4

dating by a notary employee of the trustee in a nonjudicial foreclosure is an unfair or deceptive act or practice" within the meaning of the CPA.  *Id.* at 1192.  It also held that a plaintiff could plausibly claim damages arising from that practice, where "the purpose of predated notarizations was to expedite the date of sale to please the beneficiary," and the plaintiff might have avoided the sale if it had occurred even a week later.  *Id.*  Here, by contrast, Plaintiffs allege no "false" notarization, they point out that certain documents were notarized *after* they were signed.  There is no plausible allegation that this practice is false, unlawful, or that it made any difference at all in the timing of their foreclosure.

Plaintiffs reassert, without citing any new authority, that they have a claim because ReconTrust is a subsidiary of BofA.  The court already pointed out that no law prohibits this arrangement, and that courts have allowed trustees with cozy relationships with a deed of trust beneficiary.  Feb. 7 ord. at 7-8.  Recent case law emphasizes that a trustee owes duties to both the borrower and the beneficiary of a deed of trust, and that a trustee who the lender controls or who invariably defers to the lender has violated that duty.  *See*, *e.g.*, *Klem*, 295 P.3d at 1190 (holding that "the practice of a trustee in a nonjudicial foreclosure deferring to the lender on whether to postpone a foreclosure sale and thereby failing to exercise its independent discretion as an impartial third party" is an unfair or deceptive practice under the CPA).  Here, however, there are no plausible allegations that ReconTrust was beholden to BofA.  Indeed, it was BofA who allegedly told Plaintiffs that the trustee's sale would be postponed pending a decision on the loan modification, whereas ReconTrust simply ignored Plaintiffs' attempts to postpone the sale.  If ReconTrust acted unlawfully, there are no plausible allegations that it did so because it was beholden to BofA.

Plaintiffs reassert, without citing any new authority, that the BofA or ReconTrust employees who signed some critical documents were actually employees of ReconTrust, or BofA.  The court rejected that argument in February, noting that if someone at

ORDER – 5

1    ReconTrust or BofA acted without the authority of the corporate entity he or she

2    purported to represent, that was a problem impacting only the Defendants.  Plaintiffs

3    have no standing to raise a dispute based on who at ReconTrust BofA authorized to sign

4    certain documents.  So, for example, when Plaintiffs insist that Leticia Quintana, the

5    purported "Assistant Secretary" of BofA who signed the document appointing

6    ReconTrust as a successor trustee was not actually an Assistant Secretary of BofA, but

7    rather an employee of ReconTrust, the allegation makes no difference.  BofA is

8    responsible for deciding who may take actions on its behalf, not Plaintiffs.

9           Plaintiffs reassert, verbatim, the same cursory allegations that either BofA or

10   ReconTrust misrepresented their past due loan balance and inflated fees associated with

11   their default.  The court rejected those allegations as conclusory in February, noting the

12   absence of any "allegations that identify the 'inflated fees' or the specific

13   misrepresentation about the amount Plaintiffs owed . . . ."  Feb. 7 ord. at 6.  Plaintiffs'

14   response was to make precisely the same conclusory allegations.

15          When the court dismissed Plaintiffs' first complaint and granted leave to amend, it

16   ordered them to "amend or delete the allegations that do not . . . describe a violation of

17   law," and stated that it would consider imposing sanctions via 28 U.S.C. § 1927 if

18   Plaintiffs did not comply.  Feb. 7 ord. at 12-13.  Plaintiffs repeatedly ignored the court's

19   order, reasserting each of the claims above without either amending them or making new

20   argument to defend them.  In at least a few instances, Plaintiffs repeated their allegations

21   verbatim, as if the February 7 order had never issued.[2]  The court declines to consider

22   § 1927 sanctions only because Defendants did not request them in their motion to

23   dismiss.

---

[2] The February 7 order noted that the complaint repeatedly "misname[d] Ms. Kaur and Mr.
Singh."  The amended complaint continues to misname them, albeit less frequently.  Amend.
Compl. ¶¶ 3.8, IV.6 (referring to Plaintiffs as "the Rouses").  In the penultimate section of the
opposition to the motion to dismiss, Plaintiff's counsel again misnames her clients.  Pltfs.' Opp'n
(Dkt. # 23) at 24 (discussing the misrepresentation claims of a "Mr. Gile" or "Mr. Giles").

ORDER – 6

**B.   Plaintiffs Cannot State Claims By Making Accusation of Wrongdoing Not Tethered to a Cognizable Legal Theory.**

The amended complaint includes allegations that BofA violated a consent order between it and a federal regulatory agency and that BofA violated Fannie Mae's loan servicing guidelines.  Plaintiffs did not attach the consent order to the complaint, but they contend that BofA agreed to end dual tracking practices like those to which it subjected Plaintiffs.  The complaint does not purport to state a claim for violation of the consent order.  Plaintiffs purport to attach Fannie Mae's servicing guidelines to the complaint, but they do not.  Even so, they do not explain how they could state a cause of action based on violation of another party's servicing guidelines.

**C.   Plaintiffs Still Make No Plausible Allegation that Fannie Mae Was the Holder of the Note During the Foreclosure Process.**

Plaintiffs attempted in their amended complaint to provide additional allegations to support their allegation that Fannie Mae, not BofA, was the holder of their promissory note during the foreclosure process.  The court noted that even Defendants seemed confused as to who held Plaintiffs' note, but explained that Plaintiffs had not plausibly alleged that it was Fannie Mae.  Feb. 7 ord. at 4-5.

Before considering whether Plaintiffs fare any better at plausibly alleging that Fannie Mae held their note, the court explains why it potentially makes a difference.  The document that purportedly appointed ReconTrust as the trustee was a document from the fall of 2010 in which BofA, purporting to be the "present beneficiary" of the deed of trust, appointed ReconTrust as a successor trustee.  If BofA was not the present beneficiary (or the beneficiary's agent), it lacked authority to appoint a successor trustee, in which case ReconTrust had no authority to foreclose on Plaintiffs' home.  *See*, *e.g.*, *Bavand v. OneWest Bank, FSB*, 309 P.3d 636, 649 (Wash. Ct. App. 2013) (reversing order validating trustee's sale, concluding that "[w]ithout a proper beneficiary making the appointment, [the trustee] was not vested with any of the powers of the original trustee under th[e] deed of trust," and the purported trustee had "no authority . . . to conduct the

ORDER – 7

nonjudicial foreclosure . . . and trustee's sale").  Moreover, if ReconTrust purported to act as the trustee while knowing that it had no authority to do so, it is potentially liable to Plaintiffs via both the Deed of Trust Act and the CPA.  *See*, *e.g.*, *Walker v. Quality Loan Serv. Corp.*, 308 P.3d 716, 724, 727-28 (Wash. Ct. App. 2013) (reversing dismissal of Deed of Trust Act claim and CPA claim where plaintiff alleged that purported trustee conducted foreclosure proceedings when it knew or should have known it had no authority to do so); *Bavand*, 309 P.3d at 652-53 (same).  If BofA enabled that violation either by purporting to appoint ReconTrust as trustee when it had no authority to do so, or by controlling ReconTrust, then BofA may also be liable.  *Walker*, 308 P.3d at 724 (considering whether Deed of Trust Act authorizes claim against purported beneficiary, as opposed to purported trustee); *Bavand*, 309 P.3d at 651 (holding that non-beneficiary's appointment of trustee is an unfair or deceptive practice under the CPA).

    In this case, however, Plaintiffs offer no plausible allegation that BofA was not the beneficiary (or authorized agent of the beneficiary) entitled to appoint ReconTrust as a trustee.  There is no dispute that BofA was the original beneficiary of the deed of trust, as it was the original lender and secured party.  Plaintiffs allege that at some point before foreclosure proceedings began, BofA sold or transferred the note to Fannie Mae.  Plaintiffs make no allegation which, if proven, would constitute direct evidence of this purported transfer.  The allegations that do describe direct evidence suggest that BofA was the beneficiary.  For example, BofA transferred its beneficial interest in the deed of trust to Fannie Mae *after* the foreclosure sale.

    Instead of allegations akin to direct evidence, Plaintiffs rely on Fannie Mae's guidelines for its loan servicers, alleging (to the extent that the court can understand the allegations) that since BofA took some actions consistent with those guidelines, it must have been a servicer, and not a beneficiary.  These allegations are unavailing for two reasons.  First, the actions described in the guidelines are also consistent with the actions

ORDER – 8

that a beneficiary would take.  Second, even if Plaintiffs were correct about the transfer of the note to Fannie Mae, the very guidelines Plaintiffs rely on describe a practice wherein Fannie Mae authorized its servicers to foreclose on homes, either as Fannie Mae's agent or (where necessary) as the holder[3] of the note.  A beneficiary is entitled to use agents, although it cannot authorize a third party to foreclose by simply ceding its authority over foreclosure decisions without exercising any control over that party.  *See*, *Rucker v. NovaStar Mort., Inc.*, 311 P.3d 31, 38 (Wash. Ct. App. 2013 (finding no lawful agency where an agreement between beneficiary and servicer "appears to give unlimited power to [the servicer] to pursue foreclosure actions").  But there is no plausible assertion that this is what occurred in this case.  No one could reasonably infer from the allegations of the amended complaint that BofA either was not the holder of the note or not the authorized agent of Fannie Mae.  *See Butler v. OneWest Bank, FSB*, No. 11-18996MLB, Adv. No. 12-1209MLB, 2014 Bankr. LEXIS 3015, at *18-30 (W.D. Wash. Bankr. Jul. 9, 2014) (examining relationship between servicer, note owner, and document custodian and concluding servicer lawfully acted as note owner's agent and as note holder).

**D.   Plaintiffs Do Not Plausibly Allege an Injury Arising From Defendants' Dual Tracking.**

Finally, the court considers Plaintiffs' attempt to state a claim based on Bank of America's dual tracking.  As the court noted in February, it is plausible to conclude that BofA engaged in unfair or deceptive conduct within the meaning of the CPA, or made false representations, when it told Plaintiffs that no one would foreclose until BofA made a decision about their loan modification.  The problem, the court explained, was that there was no plausible allegation of injury arising from this wrongdoing.

---

[3] The court repeatedly uses the term "holder," because it is the holder of the note who has the authority to act as the beneficiary of the deed of trust.  *See Trujillo v. NW Trustee Servs., Inc.*, 326 P.3d 768, 773-74 (Wash. 2014) (distinguishing between "holder," "owner," and "beneficiary" as applied to the Deed of Trust Act).  Plaintiffs often assert that Fannie Mae was the "owner" of their note, an assertion that does not address whether BofA was the note's beneficiary.  *Id.* at 775 ("Ownership of the note is not dispositive.").

ORDER – 9

1   There are still no plausible allegations of injury arising from the dual tracking.

2   The amended complaint adds a few allegations of injury, including "the cost of

3   investigating [Plaintiffs'] claims after the foreclosure, the costs of defending the eviction

4   proceeding, the costs associated with moving from the Property, and costs associated

5   with attending meetings to investigate their claims and attending hearings."  Amend.

6   Compl. ¶ 2.23.  Where such costs arise from unlawful conduct, they can be injuries that

7   satisfy the CPA.  *E.g.*, *Walker*, 308 P.3d at 727 (holding that investigative expenses,

8   travel expenses, and time off from work caused by attempted unlawful foreclosure were

9   CPA injuries attributable to lender and trustee).  But none of the injuries Plaintiffs

10  complain of were caused by BofA's dual tracking.  Plaintiffs do not allege that if BofA

11  had not made the false representations, they would have taken action to stop the trustee's

12  sale.[4]  They could not have done so, because they admit they were in default, and do not

13  allege that they could have cured the default.  Although they understandably complain

14  that BofA's misconduct filled them with false hope, Plaintiffs do not allege that they

15  relied on BofA's misrepresentations in any legally cognizable way.[5]  Although Plaintiffs

16  hoped for a modified loan, there is no plausible allegation that anyone was required to

---

18  [4] Plaintiffs' opposition to the motion to dismiss includes the bare assertion that if they "had been
19  provided with truthful information about the foreclosure sale, they would have been able to take
    action to prevent it from occurring."  Pltfs.' Opp'n (Dkt. # 23) at 5.  The amended complaint
20  neither contains that allegation nor offers supporting allegations that make it plausible.  The
    opposition also attaches a variety of documents that are nowhere mentioned in the amended
21  complaint, and thus are beyond the scope of the court's consideration on a motion to dismiss.
    The court has nonetheless reviewed the documents.  They do not undermine the conclusions the
22  court reaches today.  Finally, Plaintiffs used the opposition to the motion to dismiss to state, for
    the first time, that the notice of trustee's sale failed to identify the note holder and servicer in
23  violation of RCW 61.24.030(8)(l) and that they have not seen the beneficiary declaration
    described in RCW 61.24.030(7).  These claims come too late, and neither is cognizable. They
24  allege no damages arising from noncompliance with RCW 61.24.030(8)(l), and RCW
    61.24.030(7) does not require a beneficiary declaration, much less that the trustee provide the
    declaration to a borrower.

25  [5] Plaintiffs reassert their allegations of emotional distress, but do not address the court's prior
26  observation that the CPA does not permit them to recover for emotional injuries.  They do not
    argue that either a suit for misrepresentation or the Deed of Trust Act permits them to recover for
27  a purely emotional injury.

28  ORDER – 10

offer them one.  Plaintiffs admit that they knew within four days after the foreclosure sale that they would not receive a loan modification.  Plaintiffs took no legal action until more than two years after the foreclosure sale.  In short, the injuries to which they point are not the result of Defendants' false representations during the dual tracking process, they are the result of a trustee's sale and subsequent eviction that Plaintiffs have not plausibly challenged as unlawful.

For the same reason, Plaintiffs state no claim based on ReconTrust's ignoring their phone calls in the two days preceding the trustee's sale.  That is misconduct, to be sure, and the court suggests no approval of the practice.  But Plaintiffs do not offer plausible allegations of an injury caused by ReconTrust's misconduct.  There is no plausible allegation that it would have made a difference if Plaintiffs had reached ReconTrust.

### IV.  CONCLUSION

For the reasons previously stated, the court GRANTS Defendants' motion to dismiss.  Dkt. # 22.  Plaintiffs did not request leave to amend their complaint again, and the court concludes that no amendment would remedy the deficiencies the court has identified in this order.  The court accordingly DISMISSES this action with prejudice, and directs the clerk to enter judgment for Defendants.

DATED this 29th day of July, 2014.


The Honorable Richard A. Jones
United States District Court Judge

ORDER – 11